**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

      **vs.**

**RICHARD SINDE,**

                              **Defendant/Petitioner.**

                                          **1:21-CR-343
(MAD)**

---

**APPEARANCES:**

**OFFICE OF THE UNITED
STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207
Attorney for the Government

**RICHARD SINDE**
33454-054
CANAAN
U.S. Penitentiary
Inmate Mail/Parcels
P.O. BOX 300
Waymart, Pennsylvania 18472
Defendant/Petitioner, *pro se*

**OF COUNSEL:**

**DUSTIN SEGOVIA, AUSA**

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 2, 2021, a criminal complaint was filed against Robert Ingrao, alleging one count of possession with intent to distribute five or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1). *See* Dkt. No. 1. On September 28, 2021, the Government returned a two-count indictment against Ingrao and Richard Sinde ("Petitioner"). *See* Dkt. No. 17. The indictment

1

charged Ingrao and Petitioner with one count of conspiracy to distribute cocaine in violation of 21 U.S.C § 841(b)(1)(A) and one count of possession with intent to distribute five or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1).  *See id.*  Petitioner entered a not guilty plea, and following a detention hearing, was released under the supervision of probation.  *See* Text Minute Entry 10/15/2021; Dkt. No. 23.  A superseding indictment was filed on December 14, 2021, charging Petitioner, Ingrao, and Christopher Kelly for the same two charges as alleged in the initial indictment.  *See* Dkt. No. 34.  Defendant Kelly pled guilty to both counts of the first superseding indictment on May 3, 2022.  *See* Dkt. No. 53; Text Minute Entry 05/03/2022.  A second superseding indictment was then filed on May 24, 2022, naming two additional Defendants, Jeffrey C. Civitello, Sr. ("Civitello Sr.") and Jeffrey C. Civitello, Jr. ("Civitello Jr."). *See* Dkt. No. 55.  The second superseding indictment also added a third charge, alleging possession with intent to distribute 500 grams or more of cocaine.  *See id.*  Defendant Ingrao pled guilty to two of the three counts of the second superseding indictment on November 21, 2022. *See* Dkt. No. 106; Text Minute Entry 11/21/2022.

Petitioner, Civitello Sr., and Civitello Jr. proceeded to trial on April 17, 2023.  *See* Dkt. No. 181.  The trial lasted approximately one week, Defendant Kelly testified on the Government's behalf, and the jury found all three Defendants guilty on all three charges.  *See* Dkt. Nos. 193, 195.  Petitioner was sentenced on December 19, 2023, to 168 months' imprisonment followed by five years of supervised release.  *See* Dkt. No. 284; Text Minute Entry 12/26/2023.  Petitioner appealed his conviction.  *See* Dkt. No. 289.  The Second Circuit affirmed the judgment on July 28, 2025.  *See* Dkt. Nos. 348, 349.

On September 15, 2025, Petitioner filed the presently pending motion to vacate his conviction pursuant to 28 U.S.C. § 2255.  *See* Dkt. No. 352.  Petitioner argues that his conviction

must be vacated because it is based on perjured testimony of one witness and coerced testimony by another witness, both of whom were called by the Government at trial. *See id.* Those witnesses are Defendant Kelly and Jessica Hollenbeck, Civitello Sr.'s ex-girlfriend, respectively.

The Government opposes the § 2255 motion on several grounds. *See* Dkt. No. 358. First, the Government argues Petitioner's motion does not state a claim for relief under § 2255 because his arguments should have been made in a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. *See id.* at 10-11. Second, the Government contends Petitioner's arguments fail on the merits. *See id.* at 11-17. Petitioner filed a reply in further support of his motion. *See* Dkt. No. 359.

For the reasons set forth below, Petitioner's motion is denied.

## II. BACKGROUND

During trial, Defendant Kelly testified about his criminal history, that he pled guilty in this case and was hoping to receive leniency at sentencing as a result of his testimony, and that he had a substance abuse history. *See* Dkt. No. 222 at 3-6. The Government showed Kelly a photo taken by law enforcement from March 31, 2021, which Kelly identified as including himself, Petitioner, and the Civitellos. *See id.* at 17-18. Kelly testified that the four individuals were standing near Civitello Jr.'s blue Jeep which had a hidden compartment and Petitioner was with Kelly that day "to transport" "drugs." *Id.* at 18-19. Kelly specified that the drug was cocaine. *See id.* at 19. Kelly identified Petitioner in the courtroom and testified that he had trafficked marijuana and cocaine with Petitioner. *See id.* at 19-20. Kelly also testified that Petitioner drove the blue Jeep from Upstate to the New York City area "to use it to transport drugs." *Id.* at 28. He explained that he met Petitioner near Queens, New York, and placed nine kilos of cocaine into the hidden compartment of the Jeep in front of Petitioner. *See id.* at 29-31. The Government asked Kelly

3

why Petitioner was "transporting cocaine" and Kelly explained that Petitioner "owed a debt. He gave somebody some cocaine and they took off, he said, and he owed a lot of money. And we were trying to help him pay it off. [Kelly] was trying to help him pay it off." *Id.* at 33.

Defendant Kelly testified that on April 2, 2021, he and Petitioner drove from the New York City area toward Schenectady, New York, following behind Defendant Ingrao. *See id.* at 34-39. While driving, Kelly and Petitioner saw Ingrao pulled over in the blue Jeep by law enforcement. *See id.* at 39. Kelly got off the highway, and "backtracked" to pass the traffic stop, again. *See id.* He did that twice. *See id.* at 41. Kelly threw his and Petitioner's pre-paid cell phones into water. *See id.* at 46-47.

During his testimony, Defendant Kelly explained that he was waiting to be sentenced by Manhattan Supreme Court on a cocaine trafficking case in March of 2021. *See id.* at 57. Kelly "told [Civitello Sr. he] was leaving him in good hands with [Petitioner], and [Petitioner] could do anything [Kelly] could do." *Id.* Kelly hoped that after he went to prison, Petitioner "would be able to pay his debt off, and [they] could make some money." *Id.* at 58.

At the end of his direct examination, the Government asked Kelly, "[s]eparate and apart from some of the days we talked about -- March 29th, March 31st and April 2nd, 2021 -- do you ever recall transporting cocaine to Schenectady while some of your family members were with you?" *Id.* at 75. Kelly stated he recalled doing this "[o]nce." *Id.* The following exchange occurred, explaining the situation:

> Q. When they were with you, where did you put the cocaine?
>
> A. I -- I wanted my mother to talk to a – my girlfriend, who was having marital problems.
>
> THE COURT: The question was: Where did you put the cocaine?

4

A. I hid the cocaine. I took the car, filled it up with gas, put cocaine in it, gave it back to him, told him to follow me up to Schenectady.

Q. So you're using your mom and your girlfriend to transport cocaine?

A. I told them I was taking them to the casino, and I was dropping my car off to be fixed. . . .

Q. Why on earth would you put cocaine in the car of your mother and your girlfriend?

A. Stupid, but I just -- nobody's going to pull over an 80-year-old woman with a -- two women. I just, you know, thought if something happened, I would have taken the blame, but I didn't foresee anything happen, put it that I way.   Unbeknownst to them.

Q. Was the cocaine safely delivered that time?

A. Yes.

*Id.* at 76.

During Petitioner's sentencing hearing, his attorney argued that "it is disturbing . . . that the [G]overnment is [] tied to the conundrum of Christopher Kelly," because Kelly "was the architect of this matter." Dkt. No. 294 at 17-18.

On July 18, 2023, this Court denied Civitello Sr. and Civitello Jr.'s motion for a new trial. *See* Dkt. No. 223. The Court noted that Defendant Kelly was "the Government's primary witness" at trial. *Id.* at 4. The Civitellos argued that their convictions could not stand, in part, because Kelly's testimony was inconsistent and he had a motive to lie. *See id.* at 13. The Court stated that "[a]s the Government noted in its summation, Kelly was not an ideal witness, with his substantial criminal history, past fraudulent activity, and substance abuse issues. His testimony, however, was mostly credible, and corroborated in large part by other evidence introduced by the Government." *Id.* at 14. However, the Court explained that it is not the Court's "role to second-

guess a jury's credibility determination on a sufficiency challenge" and concluded that "[c]onsidering the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence, the Civitellos' motions for judgment of acquittal must be denied." *Id.* at 13-14.

On July 28, 2025, the Second Circuit affirmed Petitioner and Civitello Sr.'s convictions and dismissed their appeal. *See* Dkt. No. 349. As part of that decision, the Second Circuit addressed Civitello Sr.'s argument "that the district court erred by denying his motion for a new trial. In particular, he asserts that, because Kelly provided inconsistent and incredible testimony, and this testimony was central to the government's case, a new trial is warranted to avoid manifest injustice." *Id.* at 14. The Second Circuit explained that "[t]he jury had the opportunity to observe Kelly testify and to weigh that testimony against other evidence in the case[,]" "Civitello Sr. had the opportunity to call into question Kelly's credibility through cross-examination and during summation rebuttal[,]" and Kelly's testimony was corroborated by "other evidence." *Id.* at 14-15. As part of that "other evidence," the Second Circuit reiterated Defendant Kelly's testimony "that . . . he gave nine kilograms of cocaine to Sinde, who was going to arrange for Ingrao to deliver the drugs to the Civitellos[.]" *Id.* at 15.

Petitioner now makes a similar argument to that which the Court and the Second Circuit rejected—that Defendant Kelly's testimony was false or inconsistent and cannot support the jury's verdict against Petitioner. *See* Dkt. No. 352. Specifically, Petitioner contends that "[a]t trial, Christopher Kelly testified that his mother unknowingly transported cocaine in her car on the upstate trial. That account placed narcotics at the center of the offense conduct and portrayed his mother as an unwitting courier." *Id.* at 11. Petitioner has provided the Court with a copy of

6

Defendant Kelly's mother, Barabara Kelly's, sworn affidavit. *See id.* at 27. The affidavit is dated

September 10, 2023. *See id.* That letter was submitted to the Court prior to Petitioner's

sentencing, *see* Dkt. No. 279 at 20, and the Court expressly noted its review of the letter during

Petitioner's sentencing hearing, *see* Dkt. No. 294 at 4.

Ms. Kelly's affidavit states that, on an unspecified date, she drove her car with Defendant

Kelly's girlfriend Upstate and Defendant Kelly "drove his car and followed" them. Dkt. No. 352

at 27. She attests that Petitioner "was not with us and never came there for the couple of days we

were there. My son lied in court. . . . He also said there were never drugs in my car that's why he

said to the court that I never knew I was driving with drugs in the car to cover me so I couldn't get

in any trouble." *Id.* Petitioner purportedly told Ms. Kelly that "he really went to pick up money

from [Civitello Sr.] and that was the reason for the trip. He told me that [Petitioner] was only

introduced to [the Civitello Sr.] so he could sell marijuana to him while [Defendant Kelly] was

away in jail." *Id.*

Petitioner argues that "[i]f no drugs were transported, there was no narcotics conspiracy of

any kind described at trial. And if the testimony about drugs was false, then the sentencing

calculations, which turned on drug quantity, rested on perjury." *Id.* at 11. He asserts that "[a]

sworn affidavit denying the very existence of cocaine stands in direct collision with the sworn

trial testimony that convicted" Petitioner. *Id.*

In his § 2255 motion, Petitioner also challenges the testimony of Jessica Hollenbeck. *See*

Dkt. No. 352 at 17. Ms. Hollenbeck testified that she was subpoenaed by the Government. *See*

Dkt. No. 220 at 2. She confirmed she had been "in a personal relationship with Jeffrey Civitello,

Sr." for eight years. *Id.* at 3. As to Petitioner, his attorney asked Ms. Hollenbeck, "You don't

know Richard Sinde, do you?" *Id.* at 37. Ms. Hollenbeck responded, "No, I do not." *Id.*

7

Along with his motion, Petitioner provides the Court with a letter from Ms. Hollenbeck dated February 26, 2025. *See* Dkt. No. 352 at 29-30. In her letter, Ms. Hollenbeck stated that she had not "been able to fully speak [her] truth until now." *Id.* at 29. Ms. Hollenbeck asserted that she felt "forced to give testimony that wasn't accurate. [Her] words were manipulated, and [she] was threatened with perjury every time [she] tried to clarify [her] position." *Id.* Ms. Hollenbeck stated that she "was sexually harassed by an officer who had been involved with [the] case, and when [she] reported it to the prosecutor, [she] was told her complaint was noted but no action would be taken." *Id.*

As the Government explains, Ms. Hollenbeck's letter is unsworn and was "submitted as a victim impact statement in [*United States*] *v. Patrick Civitello*, Case No. 1:24-CR-280 (MAD)." Dkt. No. 358 at 15. This Court handled Patrick Civitello's case and reviewed Ms. Hollenbeck's letter, which was attached to the Final Presentence Investigation Report, prior to his sentencing hearing. *See Civitello*, 1:24-CR-280, Dkt. No. 55 at 21-22. Ms. Hollenbeck is the mother of the victim who was physically assaulted by Patrick Civitello in retaliation for his mother's testimony at trial underlying this case. *See id.* at 5. Civitello Jr. was the final Defendant to be sentenced in this case, which was on March 22, 2024. Ms. Hollenbeck's son was assaulted on May 19, 2024.

### III. DISCUSSION

**A.      Standard of Review**

Section 2255 of Title 28 of the United States Code states, in relevant part, that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate,

set aside or correct the sentence.

28 U.S.C. § 2255(a).  Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). (quotation marks omitted).  Moreover, a movant under § 2255 is barred from relitigating questions "'which were raised and considered on direct appeal,'" *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995) (quotations omitted), as well as any issue he could have raised on direct appeal, whether he actually raised it on appeal or not. *See Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998) (quotation omitted).

The Court has the authority to dismiss a motion to vacate under § 2255 without a hearing if the record conclusively demonstrates that the petitioner is not entitled to relief. *See Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003).  Further, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)).

**B.    Analysis**

The Government argues the Court should not consider Petitioner's "motion because it is procedurally improper.  Section 2255 provides relief only for constitutional violations, jurisdictional errors, or significant legal or factual errors." Dkt. No. 358 at 10.  The Government contends that Petitioner's claims concerning Ms. Kelly and Hollenbeck's statements "are properly brought under Rule 33 of the Federal Rules of Criminal Procedure, not through a collateral

9

attack." *Id.* The Government notes that "[t]he only arguable exception is Sinde's assertion that the Government's nondisclosure of information about a non-testifying investigator was a *Brady* and/or *Giglio* violation." *Id.* at n.2.

Petitioner argues that his claims can be considered by the Court because "[t]he prosecution's duty to disclose favorable evidence and to correct false or materially misleading testimony does not depend on defense objection or preservation." Dkt. No. 359 at 9. He contends that "[s]uppression of favorable impeachment/bias evidence, including the admitted nondisclosure regarding Hollenbeck and the later surfacing of Barbara Kelly's information, establishes cause." *Id.* Finally, Petitioner states that his arguments should be considered because he has shown prejudice in the Government's conduct because "[i]mpeachment of the [G]overnment's central witness via his mother's allegations of fabrication and motive, especially when paired with Hollenbeck-related misconduct and nondisclosure, plainly meets that standard." *Id.*

"'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Malachowski v. United States*, No. 5:08-CR-701, 2018 WL 11234034, *5 (N.D.N.Y. July 26, 2018) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963); citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). "Evidence qualifies as material when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Id.* (quoting *Wearry v. Cain*, 577 U.S. 385, 392 (2016)). "[C]ourts in this Circuit have expressed doubts regarding whether the availability of new evidence can serve as an independent ground for relief under 28 U.S.C. § 2255." *United States v. Ramsey*, No. 15-CR-525, 2026 WL 1091333, *6 (E.D.N.Y. Apr. 22, 2026) (collecting cases); *see Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been

held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding").

Petitioner does not explain why he failed to move for a new trial pursuant to Rule 33. He also does not explain why he failed to make the argument concerning Ms. Kelly's affidavit to the Second Circuit as part of his appeal. Regardless, for the following reasons, Petitioner has not established the existence of new evidence or a constitutional violation that justifies relief.

First, "[a]t the very least, before a recantation statement may qualify as competent evidence for habeas review, it would need to be in sworn affidavit form, subject to penalty for perjury." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007). The Second Circuit has noted that "the requirement of an affidavit [is not] a difficult hurdle to clear." *Id.* Second, "'the discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial.'" *United States v. Jones*, 965 F.3d 149, 164-65 (2d Cir. 2020) (quoting *United States v. Spencer*, 4 F.3d 115, 119 (2d Cir. 1993)). That is because "'a new trial is generally not required when the testimony of the witness is corroborated by other testimony . . . .'" *United States v. Hunter*, 32 F.4th 22, 34 (2d Cir. 2022) (quoting *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995)). Third, and likewise, "[i]t is well settled that where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998) (collecting cases).

Assuming, *arguendo*, that Ms. Kelly's sworn statement establishes that a part of Defendant Kelly's testimony was false, it does not support the Petitioner's request for relief. First, the defense attorneys had ample ammunition that they used to attack Defendant Kelly's credibility at

11

trial. *See, e.g.*, Dkt. No. 222 at 84-111 (Cross examination of Defendant Kelly about his prior convictions, hope for leniency, faulty memory, etc.). As the Court noted in its denial of the Civitellos' motion for a new trial, "Kelly was not an ideal witness[.]" Dkt. No. 223 at 14. However, that does not invalidate the jury's verdict where it had the opportunity to consider Defendant Kelly's credibility, which was vigorously challenged on cross examination, along with the other evidence presented at trial. Ms. Kelly's letter would be an additional piece of information that could call into question Defendant Kelly's credibility, but it does not negate the existence of the drug conspiracy or Petitioner's participation in it. Therefore, the letter is not likely to alter the jury's verdict.

As to Ms. Hollenbeck, her letter is unsworn. This alone would warrant the Court's rejection of Petitioner's arguments because it is insufficient to combat her sworn trial testimony. However, Ms. Hollenbeck also fails to specify any piece of her testimony that was allegedly coerced or inaccurate. *See* Dkt. No. 352 at 29-30. She states only generally that she "felt targeted, like [she] was being coerced into a narrative that wasn't" hers. *Id.* at 29. Ms. Hollenbeck testified that she did not know Petitioner. *See* Dkt. No. 220 at 37. Petitioner has not explained how any purported error in her testimony would alter the verdict against Petitioner, whom she did not know, particularly because her letter does not negate the existence of the drug conspiracy. Ms. Hollenbeck states only that things got out of hand for everyone involved, including her son who was assaulted by Patrick Civitello. *See* Dkt. No. 352 at 29-30. That does not support a new trial in Petitioner's case.

The Government also negates any purported problems in Ms. Hollenbeck's trial testimony. The Government obtained a sworn declaration from Attorney Michael Barnett, who was lead Government trial counsel. *See* Dkt. No. 358-1. In his declaration, Mr. Barnett explained that in

October of 2021, after Defendants had been indicted, an investigator called Mr. Barnett "informing [him] that as part of a separate investigation he was conducting, he had come across a witness who had information about Civitello Sr.'s involvement in drug trafficking. This witness, Jessica Hollenbeck, a former girlfriend of Civitello Sr., had described a series of events that seemed to coincide with the subject matter of the case in which [Petitioner] had already been indicted." *Id.* at ¶ 5. Mr. Barnett interviewed Ms. Hollenbeck twice in 2021 and does "not recall communicating with Ms. Hollenbeck for the remainder of 2021 and all of 2022." *Id.* at ¶¶ 6-7. Ms. Hollenbeck retained her own counsel. *See id.* at ¶ 9. On February 14, 2023, Ms. Hollenbeck and her attorney met with Mr. Barnett and a federal law enforcement agent. *See id.* at ¶ 10. During that interview, Ms. Hollenbeck told Mr. Barnett that the investigator "had drunkenly harassed and made advances on her at a Schenectady bar where she was out with friends" in May of 2022. *Id.* Ms. Hollenbeck and a friend drove the investigator "home and [] he acted inappropriately during the ride." *Id.* Mr. Barnett attested that Ms. Hollenbeck "said that his conduct did not affect her grand jury testimony – which had happened months prior to the incident – and that it would not affect her trial testimony." *Id.*

Mr. Barnett also stated that he "never told Ms. Hollenbeck that nothing would be done about [the i]nvestigator []. ([The i]nvestigator was not a federal [task force officer]. The U.S. Attorney's Office has no authority over whether and how a local investigator is punished for misconduct.)." *Id.* Mr. Barnett did inform the investigator's supervisor about the allegations and he spoke to attorneys in his office about whether the information needed to be disclosed to defense counsel. *See id.* at ¶ 11. He and the other attorneys determined it did not need to be disclosed because the investigator "was not going to be a witness at trial (nor was he even part of the [Drug Enforcement Administration's] investigative team); his alleged conduct could not have

13

affected Ms. Hollenbeck's grand jury testimony; and there was no reason to believe it would impact her trial testimony." *Id.*

Mr. Barnett explained that Ms. Hollenbeck testified at Petitioner's trial on April 19, 2023, and he did "not recall speaking to her again until May 2024, when Patrick Civitello assaulted her 15-year-old son in the parking lot of a restaurant, in retaliation for Ms. Hollenbeck's trial testimony a year prior." *Id.* at ¶ 14. "At that time, Ms. Hollenbeck repeatedly expressed the opinion that she had been retaliated against for complying with subpoenas." *Id.* at ¶ 15. Mr. Barnett attested as follows:

> At no time did Ms. Hollenbeck ever suggest to me, with respect to her November 2021 grand jury testimony or her April 2023 trial testimony, that her words had been misrepresented or manipulated, that she was coerced into testifying, that she had been threatened with perjury, or that she was forced to give inaccurate testimony or gave inaccurate testimony.

*Id.* at ¶ 17.

In his reply, Petitioner argues the Government's response demonstrates "intensive witness-management, circling topics for trial, followed by transcript-review sessions in which key points softened or became uncertain, underscoring why the defense was entitled to the full set of notes and communications bearing on pressure, threats, and access to counsel." Dkt. No. 359 at 7.

Petitioner is incorrect. Ms. Hollenbeck's typed letter is unsworn. *See* Dkt. No. 352 at 29-30. It contains only her typed name but no written signature. It was written after her son had been physically assaulted by Patrick Civitello as a direct result of her trial testimony. *See Civitello*, 1:24-CR-280, Dkt. Nos 45, 55. The letter does not identify a single specific part of Ms. Hollenbeck's trial testimony which was allegedly "forced," Dkt. No. 352 at 29, and Mr. Barnett's sworn declaration supports the conclusion that her testimony was not coerced by the Government.

Second, Defendant is not entitled to every note or communication from a government attorney. *See United States v. Shyne*, 617 F.3d 103, 108 (2d Cir. 2010) ("'[I]t is well established that where a non-witness' out-of-court statements are not offered for their truth, the non-witness' credibility is not relevant and evidence intended to impeach the non-witness may properly be excluded'") (quoting *United States v. Schweiger*, No. 00-CR-284, 2001 WL 649826 (S.D.N.Y. June 12, 2001)). "*Brady* and its progeny may require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant," *United States v. Jackson*, 345 F.3d 59, 70-71 (2d Cir. 2003); however, Petitioner makes no assertion that the Government sought to admit an out-of-court statement from the investigator for the truth of the matter. Third, Defendant references "access to counsel." Dkt. No. 359 at 7. Ms. Hollenbeck never indicated she was unable to access counsel. Petitioner does not make such an argument, either. Rather, her attorney was present during the meeting in which she disclosed the harassment. Fourth, as sworn by Mr. Barnett under the penalty of perjury, Ms. Hollenbeck told Mr. Barnett that her grand jury testimony was not impacted by the investigator's behavior (which would have been chronologically impossible anyways), and it would not affect her trial testimony. *See* Dkt. No. 358-1 at ¶ 10.

Based on the foregoing, the Court agrees with the Government when it states that Petitioner "does not cite a single case for the notion that Ms. Hollenbeck's once being subject to harassment – by an investigator who was not a federal law enforcement officer and not part of the [federal] investigative team – made her 'inherently vulnerable to pressure.'" Dkt. No. 358 at 16 (citation omitted). Likewise, Petitioner "fails to explain how the investigator's harassment of Ms. Hollenbeck, if disclosed, would have affected the trial's outcome." *Id.*

15

Finally, Petitioner mentions "[a]ctual innocence" Dkt. No. 352 at 21. Petitioner's filings have not come close to demonstrating his innocence of the drug conspiracy. As explained by the Government, even if Defendant Kelly lied about drugs being hidden in his mother's car and Ms. Hollenbeck felt pressured to testify, the evidence at trial included photos of Petitioner with the other Defendants in and around the vehicle which contained a hidden compartment filled with kilograms of cocaine, vehicle and cell phone tracking data which corroborated Kelly's testimony, and law enforcement agent testimony about the tracking data and recovered drugs. *See* Dkt. No. 223 at 5-8 (explaining the evidence presented which supported the verdict beyond Defendant Kelly's testimony). Petitioner asserts that "[a] sworn affidavit denying the very existence of cocaine stands in direct collision with the sworn trial testimony that convicted" Petitioner. Dkt. No. 352 at 11. However, Ms. Hollenbeck's statement does not "deny[] the very existence of cocaine[.]" *Id.* At most, the "letter merely establishes another basis for calling her son's credibility into question," Dkt. No. 358 at 13, but that is not enough to require a new trial.

In sum, Petitioner has failed to demonstrate the existence of new evidence or a constitutional violation that warrants vacatur of his conviction, let alone a new trial. His motion is denied.[1]

---

[1] Petitioner argues in his reply that the Government's request for an extension of time to file its response "confirms the issues' centrality." Dkt. No. 359 at 9. Petitioner contends that the Government's requests support his motion. *See id.* at 9-10. Part of the Government's reason for its extension requests was because the lead prosecutor on the case began a different job. *See* Dkt. No. 355. Petitioner's assertion that an extension request supports his motion finds no support in the law and is rejected. Petitioner also submitted "supplemental authority" to the Court. Dkt. No. 360. Petitioner notes that John A. Sarcone III, whose name was included on the Government's opposition Petitioner's § 2255 motion, was found by a judge of the Southern District of New York to be unlawfully serving as Acting United States Attorney. *See id.* Petitioner is correct but provides no legal authority which states that the Assistant United States Attorney who drafted and submitted the response on behalf of the Government is without authority to do so.

## C.    Evidentiary Hearing

Petitioner asks the Court to conduct an evidentiary hearing to determine whether there was "[c]oercion/pressure and witness-handling of Ms. Hollenbeck, including perjury threats, narrative-shaping, and access to counsel," the veracity of the harassment allegation and impact of the Government's nondisclosure, and "[t]he circumstances, content, and reliability of Barabara Kelly's letter[.]"  Dkt. No. 359 at 11.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  However, "[t]he filing of a § 2255 motion does not, by itself, obligate the district court to conduct an evidentiary proceeding."  *Smith v. United States*, No. 1:20-CV-04195, 2020 WL 13065428, *4 (S.D.N.Y. Dec. 31, 2020), *R&R adopted*, 2022 WL 443631 (S.D.N.Y. Feb. 14, 2022) (citing *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977)).  "'[A]n evidentiary hearing is required on a [§] 2255 motion only when the papers on the motion, measured by the same standards of competence and admissibility applicable to motions for summary judgment, reveal the existence of a genuine issue of material fact.'"  *United States v. Sahabir*, 880 F. Supp. 2d 377, 383 (N.D.N.Y. 2012) (quoting *Lamberti v. United States*, 22 F. Supp. 2d 60, 71 (S.D.N.Y. 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999)).

"An evidentiary hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'"  *Id.* (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)); *see Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) ("[I]n order to warrant an evidentiary hearing in the district court on a . . . § 2255 petition, 'the application must contain assertions of fact that a respondent is in a

17

position to establish by competent evidence . . . .  Airy generalities, conclusory assertions and hearsay statements will not suffice . . . .'") (citation and internal quotation marks omitted). "[E]ven if the motion presents factual issues, the district court has the authority to deny the motion without a hearing when the motion, any attached exhibits, and the record of the prior proceedings plainly show that the movant is not entitled to relief."  *United States v. Handford*, No. 5:14-CR-0273, 2016 WL 8670498, *3 (N.D.N.Y. Oct. 25, 2016) (citing *Puglisi*, 586 F.3d at 214).

In the present matter, the Court finds no evidentiary hearing is necessary.  Based upon the Court's review of the record, including the trial transcripts, the sentencing transcript, Mr. Barnett's declaration, and the relevant law, the Court is persuaded that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b). Petitioner's argument that two statements (one from an individual who did not testify at trial and the other from an individual who testified that she did not know Petitioner) impacted the jury's verdict against him is meritless.  *See United States v. Salvagno*, No. 5:02-CR-0051, 2013 WL 12364812, *7 (N.D.N.Y. July 25, 2013) ("Because the files and record conclusively show that the § 2255 Motions are without merit, the Court finds that no evidentiary hearing is warranted").

**D.      Certificate of Appealability**

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. § 2253(c)(1).  Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  FED. R. APP. P.

22(b)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Petitioner has failed to make such a showing with regard to his claims.  The Court therefore declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 352) is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued in this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

Dated:  June 10, 2026
         Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

19